UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
**GRACE FORSYTHE,**

                              Case No.: _____

                **Plaintiff,**

     -against-

**MIDLAND FUNDING, LLC and
MIDLAND CREDIT MANAGEMENT**
                **Defendants.**
------------------------------------------------------------------------X

## ORIGINAL COMPLAINT AND JURY DEMAND

     Plaintiff Grace Forsythe brings suit against Defendant debt collectors for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and for conversion, and in support would show as follows.

     This suit regards, *inter alia*, Defendants' failure to return attempts to execute upon and otherwise collect on a sewer judgment for a debt that had previously been paid; doing so without providing a notice of assignment or conducting a meaningful attorney review; and then continuing got execute upon the judgment – not once, but twice -- *after* the court vacated the same.

### A.   JURISDICTION AND VENUE

1.     The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction

1

that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Queens County, New York.

### B. PARTIES

3. Plaintiff GRACE FORSYTHE ("MS. FORSYTHE") is an individual currently residing in Queens County, New York.

4. Defendant Midland Funding LLC ("MF") is a Delaware corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123. It does or transacts business in the state of New York.

5. The principal (indeed sole) purpose of MF is to purchase putative consumer debt after the debt has been has been charged off by the putative original creditor.

6. MF has no employees.

7. MF then seeks to enforce the debts against the consumers through lawsuits filed in its name.

8. MF filed hundreds of thousands of collection lawsuits in New York courts in 2012; 313,995 of them in just the 68 courts available on the New York "e-courts" system, https://iapps.courts.state.ny.us/webcivil/ecourtsMain.

9. The mails and telephone system are used in connection with the prosecution of these MF lawsuits.

10. MF is a "debt collector" as defined in the FDCPA.

11. MF engages in business in the State of New York, and this suit arose out of MF's business in New York.

### *Midland Credit Management ("MCM")*

12. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal place of business also located at 8875 Aero Drive, San Diego, CA 92123. MCM does business in the state of New York.

13. MCM holds a collection agency license from the New York City Department of Consumer Affairs.

14. MCM is the servicer for MF. While collection lawsuits are filed in the name of MF, the owner of the putative debt, the affirmative collection attempts to collect that debt are taken by MCM. These affirmative steps include the sending of collection letters, the making of collection phone calls, and the arrangement with counsel for collection lawsuits in the name of MF.

15. MCM uses the mails and telephone system to conduct its business.

16. MCM is a "debt collector" as defined in the FDCPA.

17. MCM engages in business in the State of New York, and this suit arose out of MCM's business in New York.

### *The "Midland Defendants"*

18. For the reasons stated above, MF and MCM operate as a joint venture to collect putative debts. For this reason, this complaint will use the term "Midland Defendants" or "Midland" to refer to them jointly and severally.

### C. STATEMENT OF FACTS

19. On February 15, 2012, MF filed a collections lawsuit in Queens County Civil Court, Index No. CV-006391-12/QU, captioned *Midland Funding, LLC v. Grace Forsythe*. ("the Collection Lawsuit").

20. The complaint is signed "MIDLAND FUNDING, LLC, Scott Morris, 100, Church St. 8th Floor, New York, NY 10007." Mr. Morris contends he is an in-house counsel for MF.

21. On or about May 31, 2012, Midland obtained a default judgment against Ms. Forsythe for $9957.69, with post-judgment rate of 9%.

22. On or about September 5, 2013 attorney Amanda Perez, signing as an "In-House Counsel for Midland Funding, LLC," executed an income execution to Ms. Forsyth's employer, New York Hospital Queens. Thereafter, Midland, through NYC Marshal Ronald Moses began executing on 10 % of Ms. Forsyth's wages, and continued to do so through Ms. Forsyth's pay period of January 12, 2017.

23. Attached as **Exhibit A** are the account notes of Marshal Moses as to collection attempts on behalf of Midland. Those records are incorporated by reference in their entirety. Plaintiff assumes the facts stated in Marshal Moses' records are correct for purposes of this Complaint.

24. From October 29, 2013 through December 27, 2016 Marshal Moses issued – and Midland cashed – payments from the garnishments of Ms. Forsyth's wages. Exh A, pp. 1-6. The Marshal's records indicate that it issues – and Midland cashed – checks totaling approximately $10,782.21 from the garnishment of Ms. Forsythe's wages. Hundreds of dollars more were garnished from Ms. Forsythe's wages to pay for the Marshal's collection expenses.

25. On or about December 29, 2016, Ms. Forsythe filed an Order to Show Cause ("OSC") in Queens County Civil Court to vacated the default judgment and dismiss the Collection Lawsuit,

and staying all collection efforts in the interim. *See* **Exh B (Dec. 29, 2016 OSC).** The OSC contended that the summons and complaint had not been properly served. Finding merit to the application, Civil Court Judge Larry L. Love signed the application the same day, staying all collection activities, and setting a hearing on January 11, 2017. Judge Love ruled in the OSC that "it would be deemed good and sufficient service" if Ms. Forsythe sent a copy of the OSC via First Class Mail with official Post Office Certificate of Mailing to Marshal Moses and to "Scott Morris (Counsel for Pltf), at 100 Church St. 8th Floor, New York, NY." Ms. Forsythe complied, mailing the OSC the very next day. *Id*. (last page).

26. Critically, on January 4, 2017 the Marshal receive – *and forwarded to counsel for Midland* – a copy of the OSC. *See* Exh B (Marshal account notes) p. 9, line 21.

27. On January 11, 2017, Ms. Forsythe appeared in Queens County Civil Court for the hearing on the motion to vacate the default judgment. However, the court adjourned the motion until February 21, 2017 and ordered Ms. Forsythe to re-serve Midland by first-class mail to an address at 75 Maiden Lane, Suite 207, New York, NY 10038. The court ordered all stays on enforcement of the alleged judgment to remain in effect. *See* Exh C (January 11, 2017 order resetting hearing). Ms. Forsythe promptly complied with the order and filed a certificate of mailing demonstrating service was sent to the new address. *Id*. (page 2).

28. The 100 Church St. address was the Midland address used on the summons and complaint. The 75 Maiden Lane address was an address listed on the Court's "ecourts" website for Midland. *See* Exh D (Ecourts print out, p.1).

29. Meanwhile, despite two court orders to halt enforcement of the alleged judgment, Midland continued to garnish Ms. Forsythe's wages on or about January 10, 2017 and January 19, 2017. *See* Exh B (Marshal account notes) p. 6, lines 53, 54.

30. On February 21, 2017 Ms. Forsythe went to court but the judge again adjourned the hearing, this time to March 21, 2017. *See* Exh D (Ecourts print out, p.2, listing court appearances).

31. On March 21, 2017, Ms. Forsythe again returned to Court. On that day, the Court issued an order vacating the default judgment. *See* Exh E (March 21, 2017 Order vacating judgment). Further, the vacated "any and all income or wage garnishments, bank restraints or executions, sheriffs' or marshals' levies." The court restored the case to the calendar and deemed Ms. Forsythe's proposed answer filed. *Id.* Ms. Forsythe served a copy of the March 21, 2017 order on Midland.

32. Marshal Moses contacted counsel for Midland on March 28, 2017 and again on May 24, 2017 to ask about the status related to the OSC. *See* Exh B (Marshal account notes) p. 10, lines 37, 38. The OSC had requested that the judgment be vacated, the action dismissed, and the previously garnished funds returned.

33. On June 5, 2017, Ms. Forsythe again went to court. At long last, the court issued an order for Midland to "return all monies collected from defendant [Ms. Forsyth] in the enforcement of the judgment vacated by the March 21, 2017," and to do so "forthwith." *See* Exh F (June 5, 2017 order to return all moneys). Note, the order was for Midland not to merely return money it received, but also all monies "collected from" Ms. Forsythe. This would include not only the amounts Midland received from the garnishments, but also to fees taken by the Marshal for its collection charges.[1]

34. Subsequently, Midland failed to return Ms. Forsythe's money. On June 5, 2017, the court

---

[1] In the June 5, 2017 order the Court stated that the prior order of March 21, 2017 vacated the judgment and dismissed the action. However, the March 21, 2017 in fact vacated the default judgment, restored the case to the calendar, and deemed Ms. Forsythe's proposed answer as filed. See Exh E.

6

ordered Midland "to return all monies collected from Defendant in enforcement of the judgment vacated by the March 21, 2017 court order *forthwith*." See Exhibit J Civil Court Order dated June 5, 2017 (*emphasis added*).

35. Ms. Forsythe attempted to notify Midland on multiple occasions of the orders vacating the default judgment and ordering the money returned. The following are a non-exhaustive list of times Ms. Forsythe has provided Midland copies of the orders in the Collection Lawsuit.

36. On July 27, 2017 Ms. Forsythe sent Midland a copy of both the March 21st Order vacating the default judgment and the July 27th Order which mandated Midland to return Ms. Forsythe's money to the following addresses: (1) Scott Morris/Amanda Perez Esq. 75 Maiden Lane, Suite 207 8th Floor, New York, NY 10038; (2) Midland Funding LLC 8875 Aero Drive Suite 200 San Diego Ca 92123; (3) Midland Funding LLC 1037 Raymond Blvd. Suite 710 Newark, NJ 07102; (4) Midland Funding LLC 80 State St. Albany NY 12207; (5) Midland Credit Management PO Box 939-050 San Diego, CA 92123; and (6) Scott Morris/Amanda Perez Esq. 100 Church Street 8th Fl. New York, NY 10007.

37. These were addresses that were in the court file or were found by internet searches for MF and MCM, including the NY registered agent for MF.

38. Of the six mailings sent by Ms. Forsythe on or about July 27, 2017, two were returned, but four went through to the recipient.

39. In violation of the court order and despite Ms. Forsythe's efforts to notify Midland, Midland has refused to return Ms. Forsythe's money.

40. Again, on March 5, 2018, Ms. Forsythe *again* mailed a copy of the March 21, 2017 order (vacating the default judgment) and the June 5, 2017 order (ordering the return of the previously

garnished funds) to Midland at the following addresses: (1) Midland Funding LLC 1037 Raymond Blvd. Suite 710 Newark, NJ 07102; (2) MCM Suite 300 2365 North Side Drive San Diego, CA 92108; (3) Midland Funding LLC 75 Maiden Lane Suite 207 New York, NY 10038; (4) Midland Funding LLC 80 State St. Albany NY 12207; (5) MC Management PO Box 939-050 San Diego, CA 92123; and (6) Pressler and Pressler 7 Entin Road Parsippany NJ 07054. *All were delivered successfully.*

41. On April 27, 2018, Ms. Forsythe *yet again* mailed a copy of the March 21, 2017 order (vacating the default judgment) and the June 5, 2017 order (ordering the return of the previously garnished funds) to Midland at the following addresses: (1) Scott Morris 75 Maiden Lane, Suite 207 8th Floor, New York, NY 10038; (2) Midland Credit Management 75 Maiden Lane, Suite 207 8th Floor, New York, NY 10038; (3) MIDLAND FUNDING LLC 1037 Raymond Blvd. Suite 710 Newark, NJ 07102; (4) Midland Credit Management 2365 North Side Drive Suite 300 San Diego, CA 92108; (5) Midland credit management c/o Corporation Service Company 80 State St. Albany NY 12207; (6) Midland Credit Management PO Box 939-050 San Diego, CA 92123 (7) Pressler and Pressler 7 Entin Road Parsippany NJ 07054; and (8) Marshal Ronald Moses, 111 John Street, Suite 500, New York NY 10038. *All were delivered successfully.*

42. In May 2018, Ms. Forsythe sent a copy of the two orders to the *again* mailed a copy of the March 21, 2017 order (vacating the default judgment) and the June 5, 2017 order (ordering the return of the previously garnished funds) to Midland, along with a letter demanding the return of the money, to the following addresses: (1) Scott Morris 75 Maiden Lane, Suite 207 8th Floor, New York, NY 10038; (2) Midland Credit Management 75 Maiden Lane, Suite 207 8th Floor, New York, NY 10038; (3) MIDLAND FUNDING LLC 1037 Raymond Blvd. Suite 710 Newark, NJ 07102; (4) Midland Credit Management 2365 North Side Drive Suite 300 San

Diego, CA 92108; (5) Midland credit management c/o Corporation Service Company 80 State St. Albany NY 12207; and (6) Midland Credit Management PO Box 939-050 San Diego, CA 92123 and (7) Pressler and Pressler 7 Entin Road Parsippany NJ 07054. All of the letters were successfully delivered.

43. Ms. Forsythe also sent copies of the Court orders to Midland at times in addition to the ones listed above.

44. In total, Ms. Forsythe has to appear in Court five times, including the date she had to go for the filing of the OSC.

45. Nearly a year after being ordered to return Ms. Forsythe's money "forthwith," Midland willfully refuses to return the over $11,000 garnished from Ms. Forsythe's wages (inclusive of collection costs imposed by the marshal), despite repeatedly being placed on notice of its requirement to do so.

### D. COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

46. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

47. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial

scope.").

48. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

49. The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

50. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

51. Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

52. Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e, and 1692f. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; threatening to take and actually taking an action prohibited by law; using unfair or unconscionable means; and collecting or seeking to collect any

amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### E. CONVERSION

53. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

54. The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

55. Property subject to conversion includes, *inter alia*, readily identifiable funds garnished from wages.

56. Defendants intentionally and without authority, assumed and exercised control over Plaintiff's wages and money, interfering with his right to possession of the same, by continuing to collect in violation of the order staying collection and, moreover, by willfully refusing to comply with a court order to return the previously garnished funds forthwith.

57. Defendants' improper restraint of Plaintiff's money without qualification, which harmfully interfered with Plaintiff's rights to control his own property, constitutes conversion.

58. For the reasons stated in the statement of facts, Defendants' conduct is gross, wanton or deliberate and demonstrates a high degree of moral culpability. Further, said Defendants conduct as alleged in the statement of facts demonstrates malice, insult, and/or willful or reckless disregard of Plaintiff's rights, or other aggravated acts by said Defendants. For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages.

## F. JURY DEMAND.

59. Plaintiff demands a trial by jury.

## G. PRAYER

60. WHEREFORE, Plaintiff requests the following relief:

a. A declaration that all Defendants have committed the violations of law alleged in this action;

b. Statutory damages under 15 U.S.C. § 1692k;

c. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k;

d. Exemplary and punitive damages for conversion.

e. A judgment for actual, statutory, punitive, and exemplary damages;

f. Prejudgment and post judgment interest as allowed by law;

g. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: Brooklyn, New York
June 4, 2018

Respectfully submitted,

/s/

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com